## APPEAL OF BOSTON DRUG CO.

Docket No. 1074.   Submitted May 27, 1925.   Decided July 11, 1925.

1. Amounts claimed by taxpayer corporation as deductions for salaries paid its president and secretary, in excess of reasonable compensation for services rendered, disallowed.

2. A portion of the net proceeds of the sale of a business owned by a corporation, paid by it to a third person who prior to such sale managed such business and received for his services a fixed salary, may not be deducted as a business expense in the absence of evidence that the salary paid was inadequate or that the corporation was obligated to pay to such person any part of the proceeds from the sale.

*Max Hardman, Esq.*, for the taxpayer.
*W. Frank Gibbs, Esq.*, for the Commissioner.

Before GRAUPNER and TRAMMELL.

This appeal involves deficiencies in income and profits taxes for the calendar years 1919, 1920, and 1921, in the respective amounts of $1,194.38, $318.33, and $697.50, a total of $2,210.21.

FINDINGS OF FACT.

1. The taxpayer is a Washington corporation with its principal office in Seattle.

2. During the period here involved and for some years prior thereto, J. C. Silverstone was president of the corporation, and Esther Silverstone, his wife, was secretary. The by-laws of the corporation provided a salary of $100 per month for the president and for the secretary. By resolution of the board of trustees, composed of J. C. Silverstone and his wife, Esther Silverstone, dated April 2, 1918, it was agreed that the president and secretary " shall each draw from the Company, if available, Five Hundred Dollars ($500.00) per month." The arrangement for each of these persons to draw salaries in equal amounts was made in view of the community property laws of the State of Washington.

3. For the years here involved the taxpayer claimed as a deduction on account of salaries paid to the president and the secretary the following sums:

| | |
|---|---|
| 1919 | $9, 000 |
| 1920 | 6, 000 |
| 1921 | 12, 000 |

The Commissioner held that the combined salary of the president and the secretary should be fixed at $4,500 for 1919, $3,000 for 1920, and $6,000 for 1921, as representing reasonable compensation for services rendered, and upon this holding disallowed the balance of the amounts claimed.

4. The taxpayer was engaged principally in the real estate business, and during the time here involved the president of the taxpayer company devoted the greater part of his time to this business. At times Mrs. Silverstone inspected with Mr. Silverstone some of the properties in which the taxpayer was interested. In financing some of the taxpayer's operations both Mr. and Mrs. Silverstone endorsed certain paper and thereby incurred personal responsibility.

5. The taxpayer also owned and operated a drug store known as the Pioneer Drug Store. This store was managed by J. C. Silverstone, president of the taxpayer, until about January, 1919. At that time H. E. Silverstone, who was a brother of J. C. Silverstone and who had been engaged in business in Kansas City, went to Seattle and assumed the management of the Pioneer Drug Store. During the

period that H. E. Silverstone managed the Pioneer Drug Store he drew, as salary, approximately $500 per month.

6. The Pioneer Drug Store was sold by the taxpayer in March or April, 1920, for approximately $19,000. The amount received was divided between the taxpayer and H. E. Silverstone. In filing its income-tax return for 1920 the taxpayer claimed as a deduction the portion of the proceeds of the sale paid over to H. E. Silverstone. This deduction was disallowed by the Commissioner.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

Graupner: The first question presented is whether the taxpayer is entitled to a deduction from gross income for salaries of its president and secretary in excess of the amount allowed as reasonable by the Commissioner. Section 234 (a) (1) of both the Revenue Acts of 1918 and 1921 permits as a deduction " a reasonable allowance for salaries or other compensation for personal services actually rendered." The only evidence we have of activity in the corporation's affairs on the part of the secretary, Mrs. Silverstone, is the testimony of her husband, which is set forth in the findings above. To our minds this testimony does not show any activity or interest on the part of Mrs. Silverstone other than would ordinarily be taken by a wife in the affairs of her husband, bearing in mind that they owned all the stock of the taxpayer corporation. That an arrangement to divide their salaries was made by the husband and wife, in view of the community property laws of the State in which they reside, can have no bearing on the case, as such an arrangement would not in any way affect the liability of the corporation.

The second question involved is whether the amount paid in 1920 to H. E. Silverstone from the proceeds of the sale of the drug store is an allowable deduction. In the petition filed it is alleged that this amount was paid as compensation and is a proper deduction as expense for services rendered and should date from January, 1919. The testimony of the president of the taxpayer was that H. E. Silverstone drew as salary approximately $500 per month during the period he was manager of the drug store. No evidence was offered to show that this was not ample compensation for the services rendered, nor is there anything in the record to establish liability on the part of the corporation to H. E. Silverstone for any portion of the proceeds realized from the sale of assets.